IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY FINNELL,

    Plaintiff,

  v.

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES also known as THE EQUITABLE and renamed AXA EQUITABLE LIFE INSURANCE COMPANY, DOES 1 through 10, inclusive,

    Defendants.
_____/

No. Civ. S-07-0129 RRB GGH

**Memorandum of Opinion and Order**

    Larry Finnell ("Finnell") filed a state action against his disability carrier AXA Equitable Life Insurance Company ("AXA Equitable") alleging breach of contract and breach of the implied covenant of good faith and fair dealing. AXA Equitable removed the action on the basis of diversity. AXA Equitable now moves for summary judgment/adjudication on the ground that Finnell's claims are time-barred under the applicable

limitations periods.  For the reasons stated below, the court GRANTS the motion.[1]

### I. BACKGROUND

On October 21, 1982, AXA Equitable issued disability income insurance policy no. 82717035 ("Policy") to Finnell.  Pl.'s Separate Statement of Undisputed Facts ("UMF") ¶ 1.  The terms of the Policy provide that AXA Equitable will pay monthly benefits to age sixty-five for disabilities caused by "sickness" and lifetime benefits for disabilities caused by an "injury." Id. ¶ 2.  "Sickness" is defined under the Policy as "sickness or disease of the Insured which first manifests itself while this policy is in force."  Id. ¶ 6.[2]  "Injury" is defined under the

---

[1] Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[2] The Policy defines "Sickness Total Disability" as "total disability caused or contributed to by sickness or by any of the following: (a) hernia of any kind; (b) bodily or mental infirmity; (c) bacterial infection other than stemming from injury on the exterior of the body; (d) complications of pregnancy; (e) medical or surgical treatment of any of (a) through (d) above or any sickness or disease."  Pl.'s UMF ¶ 5.

Policy as "accidental bodily injury which occurs while this policy is in force." Id. ¶ 4.[3]

On September 9, 1999, Finnell submitted a claim for benefits under the Policy after allegedly suffering an injury while performing the duties of his occupation as a chiropractor as the result of an "accident." Pl.'s UMF ¶¶ 7-8. Finnell claimed to be disabled from neck and back injuries he sustained after adjusting a patient weighing over three hundred and fifty pounds and lifting a piece of plywood. Id. ¶¶ 8-9. On October 15, 1999, Finnell was advised by an AXA Equitable claim representative that his medical records supported disability due to "sickness," not an "accident." Id. ¶¶ 10-11. On October 21, 1999, and December 17, 1999, AXA Equitable sent Finnell written correspondence advising him that his eligibility for "Total Disability" benefits was established under the "sickness" provision of his Policy, not the "injury" provision, based on a determination by AXA Equitable's orthopedic consultant that his condition appeared to be caused by an exacerbation of degenerative disc disease of the thoracolumbar spine. Id. ¶¶ 12, 14. The October 17, 1999, correspondence specifically advised Finnell that the maximum benefit period for "sickness"

---

[3] The Policy defines "Accident Total Disability" as "total disability resulting from injury." Pl.'s UMF ¶ 3.

3

related "Total Disability" benefits under his Policy was the first policy anniversary following his sixty-fifth birthday. Id. ¶ 12.

On January 13, 2004, AXA Equitable sent Finnell written correspondence advising him that it had reviewed his claim file and affirmed its earlier determination that his benefits should be paid under the "sickness" provision of his Policy. Id. ¶ 15. In this letter, AXA Equitable explained to Finnell that its determination was based on a review of his medical history, including the independent medical exam performed on July 29, 2003, and the functional capacity exam performed on September 25, 2003. Id. AXA Equitable expressly advised Finnell that it would continue to administer his claim under the "sickness" provision of his Policy because his medical records indicated that his 1999 diagnosis of back and neck strain was caused by an exacerbation of pre-existing degenerative disc disease. Id. Finally, on July 7, 2006, AXA Equitable sent Finnell written correspondence advising him that it was making its final payment under the "sickness" provision of his Policy because the policy period July 3, 2006 to October 20, 2006 was the first policy anniversary following his sixty-fifth birthday. Id. ¶ 16.

On November 22, 2006, Finnell filed the instant action alleging breach of contract and breach of the implied covenant

of good faith and fair dealing.  Compl. at 1-6.  AXA Equitable now moves for summary judgment/adjudication on the ground that Finnell's claims are time-barred under the applicable limitations periods.

## II. DISCUSSION

### A. Legal Standard

Rule 56(c) provides that summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it "might effect the outcome of the suit under the governing law."  Id.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the burden then shifts to the non-moving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions

on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324 (quotation marks omitted) (citing Fed.R.Civ.P. 56(e)). This burden requires more than a simple showing that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. Anderson, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).

**B.   Statutory Limitations Periods**

AXA Equitable argues that the instant action is time-barred because Finnell's claims were not filed within the applicable limitations periods.

Under California law, a breach of contract claim is subject to a four-year limitations period. <u>ABF Capital Corp. v. Osley</u>, 414 F.3d 1061, 1066 (9th Cir. 2005); <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136, 1143 n.4 (1990); Cal. Civ. Proc. Code § 337(1).  In the context of insurance contracts, when tortious conduct is alleged and tort remedies are sought a breach of the implied covenant of good faith and fair dealing claim is subject to a two-year limitations period.  <u>Heighley v. J.C. Penney Life Ins. Co.</u>, 257 F. Supp. 2d 1241, 1257 (C.D. Cal. 2003) (concluding that a tort action against an insurer for bad faith is subject to the two-year limitations period of § 339(1) when a plaintiff alleges tortious conduct and seeks tort remedies); <u>Smyth v. USAA Prop. & Cas. Ins. Co.</u>, 5 Cal. App. 4th 1470, 1476-77 (1992) (where a claim for breach of the implied covenant of good faith and fair dealing sounds in tort, it is subject to the two-year statute of limitations set forth in § 339(1)).[4]

---

[4] Because Finnell's Complaint alleges tortious conduct and seeks tort remedies (Compl. at 4-6), his claim for breach of the implied covenant of good faith and fair dealing is governed by § 339's two-year limitations period.

The statute of limitations commences when a party knows or should know the facts essential to his or her claim. See Love, 221 Cal. App. 3d at 1143 (holding that insureds' causes of action accrued when they "were aware of the factual predicate to their suit and were aware their claim had been unconditionally denied") (citation omitted); State Farm Fire & Casualty Co. v. Superior Court, 210 Cal. App. 3d 604, 609 (1989) (an insured's cause of action accrues at the latest upon the date of unconditional denial of his or her claim).[5]

In the instant action, it is undisputed that AXA Equitable sent Finnell a letter on October 21, 1999, explicitly advising him that his eligibility for "Total Disability" benefits had been established under the "sickness" provision of his Policy and that his maximum benefit period was the first policy anniversary following his sixty-fifth birthday. Pl's UMF ¶ 12;

---

[5] "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable." Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001) (citation omitted); see Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co., 90 Cal. App. 4th 335, 346-47 (2001) (an insurer acts tortiously (i.e., in bad faith) when it unreasonably or without proper cause delays or denies the payment of policy benefits). Thus, Finnell's bad faith cause of action accrued when AXA Equitable unreasonably or without proper cause denied him payment of benefits.

Exh. E, Decl. of Barbara Nason ("Nason").  It is also undisputed that this letter specifically advised Finnell that AXA Equitable was aware of his belief that his condition was caused by an "injury" but that it had nonetheless established his eligibility for disability benefits under the "sickness" provision of his Policy based on the opinion of its orthopedic consultant.  Id. Additionally, it is undisputed that AXA Equitable sent Finnell a letter on December 17, 1999, advising him that it was handling his claim under the "sickness" provision of his Policy based on the fact that his medical records did not support accidental bodily injury as his condition appeared to be caused by degenerative disc disease of the thoracal lumbar spine that was exacerbated by chiropractor manipulations of several obese patients and the lifting of plywood.  Id. ¶ 14; Exh. G, Decl. of Nason.   Finally,  it  is  undisputed  that  AXA  Equitable  sent Finnell  a  letter  on  July  7,  2006,  advising  him  that  it  was making  its  final  payment  under  the  "sickness"  disability provision  of  his  Policy  because  it  was  the  first  policy anniversary following his sixty-fifth birthday.  Id. ¶ 16; Exh. I, Decl. of Nason.

   Notwithstanding the foregoing, Finnell maintains that the instant action is not time-barred because AXA Equitable never clearly or unconditionally denied his claim for benefits under

the "injury" provisions of his Policy until it advised him that it was making its final payment of Policy benefits on July 7, 2006.  In support of this argument, Finnell points to AXA Equitable's continual investigation of his medical condition and its failure to unequivocally state that his condition was due to "sickness" rather than an "injury."  In particular, Finnell cites to letters written by AXA Equitable dated February 28, 2000, and September 8, 2000, requesting that he undergo independent medical evaluations/assessments so that his claim for disability benefits could be further evaluated.  Exhs. A, D, Decl. of Larry Finnell ("Finnell").  Additionally, Finnell cites to letters written by Disability Management Services, Inc. ("DMS") on behalf of AXA Equitable dated February 20, 2001, and August 23, 2003,[6] requesting that he complete a physical capabilities assessment and attend a functional capacity evaluation so that DMS could further evaluate his claim and gain a better understanding of his restrictions and limitations. Exh. E, G, Decl. of Finnell.  Finally, Finnell cites to a letter written by a treating physician dated January 7, 2004, indicating that he was continuing to be evaluated regarding his back and neck injuries.  Exh. I, Decl. of Finnell.  In short,

---

[6] DMS was AXA Equitable's third party administrator of Finnell's claim.

Finnell claims that the instant action is not time-barred because AXA Equitable never expressly denied his claim to disability benefits under the "injury" provision of his Policy, and even if the October and December 1999 letters could be construed to constitute a denial of such benefits, AXA Equitable "equivocated" this denial by inviting him to submit further information regarding his medical condition. The court disagrees.

In the instant action, AXA Equitable's October and December 1999 letters were sufficient to constitute an unequivocal denial of Finnell's claim to have his eligibility for "Total Disability" benefits paid out under the "injury" provision of his Policy. The October 21, 1999, letter specifically acknowledged Finnell's belief that his benefits should be established under the "injury" provision of his Policy but nonetheless expressly stated that his benefits had been established under the "sickness" provision of his Policy and that his benefits would expire upon the first policy period following his sixty-fifth birthday. Additionally, the December 17, 1999, letter clearly stated that Finnell's disability benefits would be paid under the "sickness" provision of his Policy, not the "injury" provision, and provided an

explanation as to why this determination was made.[7] Accordingly, the court concludes that Finnell's claims accrued no later than December 17, 1999. As of this date, Finnell knew or should have known the factual basis for his claim: he was injured while performing his duties as a chiropractor, that AXA Equitable had nonetheless determined that his disability was attributable to sickness, and that he would be entitled receive benefit payments under the "sickness" provision until the first anniversary

---

[7] To the extent that Finnell argues that the instant action is not time-barred because AXA Equitable never expressly stated that his claim for disability benefits under the "injury" provision of his Policy was denied, and/or because AXA Equitable subsequently requested further medical information, the court finds these arguments unavailing. It is well-established under California law that an invitation to provide further information does not render a denial equivocal nor does the failure to use the words deny or denial render a denial equivocal. Migliore v. Mid-Century Insurance Co., 97 Cal. App. 4th 592, 605 (2002). "Rather, this evidence suggests that the insurer was willing to reconsider its denial upon receipt of further pertinent information. A statement of willingness to reconsider does not render a denial equivocal." Id. (citing Singh v. Allstate Ins. Co., 63 Cal. App. 4th 135, 147-48 (1998)). Finally, to the extent that Finnell argues that AXA Equitable should be equitably estopped from asserting a statute of limitations defense because it never provided written notice of the applicable limitations periods, the court also finds this argument unavailing. See Spray, Gould & Bowers v. Associated Int'l. Ins. Co., 71 Cal. App. 4th 1260 (1999). Spray, on which Finnell relies, is inapposite: it involved an insurer's duty to notify an insured of a contractual limitations period, not a default limitations period. Therefore, because Finnell failed to demonstrate that AXA Equitable had a duty to notify him of the default limitations periods, equitable estoppel is inapplicable. See Spray, 71 Cal. App. 4th at 1268 ("It is well established that mere silence will not create an estoppel, unless there is a duty to speak").

period following his sixty-fifth birthday. As such, the applicable limitations periods ran on Finnell's claims in 2001 (implied covenant) and 2003 (breach of contract), respectively. Therefore, the instant action, filed on November 22, 2006, is time-barred.

## III. CONCLUSION

For the reasons stated above, the motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

ENTERED this 16th day of November, 2007.

                                              s/RALPH R. BEISTLINE
                                              United States District Judge